**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
-------------------------------------------------------------x

OLIN CORPORATION,

                Plaintiff,

      v.

CERTAIN UNDERWRITERS AT LLOYD'S
LONDON and CERTAIN LONDON MARKET
INSURANCE COMPANIES,

                Defendants.

-------------------------------------------------------------x

Index No. **650132/2018**

**COMPLAINT**

**Jury Trial Demanded**

## COMPLAINT

Plaintiff Olin Corporation for its complaint against Defendants alleges as follows:

### NATURE OF THE ACTION

1.    This is an action for declaratory relief to resolve disputes under a settlement agreement related to insurance coverage for certain underlying environmental claims and for relief to remedy Defendants' breaches of that settlement agreement.

### PARTIES

2.    Plaintiff Olin Corporation ("Olin") is a corporation organized under the laws of Virginia, having its principal place of business in St. Louis, Missouri.  Olin is licensed to do business and is doing business in New York.

3.    Defendants Certain Underwriters at Lloyd's London and Certain London Market Insurance Companies are those listed on the schedule attached as <u>Exhibit A</u> hereto (collectively "London").  London is comprised of (i) individuals, all or most of whom are residents and subjects of the United Kingdom of Great Britain and Northern Ireland, or corporations, all or most of which are organized pursuant to the laws of the United Kingdom, and (ii) insurers that severally

subscribed to certain insurance policies in favor of Olin and its predecessors in interest. In those policies, London agreed to submit to the jurisdiction of any court of competent jurisdiction within the United States of America at the request of the insured (*i.e.*, Olin), and to comply with all requirements necessary to give such court jurisdiction. In the contract at issue in this action, the Settlement Agreement (as defined below) between Olin and London, London agreed that any coverage litigation between Olin and London would proceed before a court of competent jurisdiction in New York, New York.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the parties named in this complaint pursuant to C.P.L.R. § 302(a)(1) and, where appropriate, B.C.L. § 307.

5.      Venue is proper in this Court pursuant to C.P.L.R. § 503(a) and (c).

## FACTS

### *London's And Others' Insurance Obligations To Olin*

6.      Over the last several decades, Olin has spent hundreds of millions of dollars remediating environmental damage at more than 100 sites across North America. The costs and liabilities Olin incurred in connection with that damage were insured by London and various other insurers, including Lamorak Insurance Company (together with its predecessors, "Lamorak"), under policies of comprehensive general liability insurance and excess liability insurance.

7.      Olin requested coverage pursuant to those policies, but London, Lamorak, and other insurers denied, ignored, or otherwise sought to evade Olin's claims (or they were caused to do so by their reinsurers, administrators, handlers, or other interests).

8.      As a result, Olin has been litigating environmental insurance coverage claims for decades in the United States District Court for the Southern District of New York against London,

Lamorak, and other insurers that issued policies covering the liabilities at issue ("SDNY Action"). Olin filed the SDNY Action in 1984, and it is ongoing. The SDNY Action is currently captioned *Olin Corporation v. Lamorak Insurance Company*, Case No. 84 Civ. 1968.

### The Olin-London Settlement Agreement

9. Through the course of the SDNY Action, Olin and London entered into a Confidential Settlement Agreement and Release, dated July 31, 2009 ("Settlement Agreement"), to settle or otherwise address Olin's coverage claims against London with respect to multiple sites at issue in the SDNY Action. The Settlement Agreement included, among other sites, the following five sites: (i) Augusta (Georgia), (ii) Fields Brook (Ohio), (iii) McIntosh (Alabama) (Operating Unit 1 and part of Operating Unit 2), (iv) Rochester (New York), and (v) Bridgeport Rental and Oil Services ("BROS") (New Jersey) (collectively, "Five Sites"). Olin, in reliance on London's contractual promises, dismissed its claims against London in the SDNY Action with prejudice as to most claims and without prejudice as to certain other claims. A true and correct copy of the Settlement Agreement is attached to this complaint as Exhibit B (sealed).

10. Subject to certain terms and conditions of the Settlement Agreement, Olin agreed to "defend, indemnify and hold harmless" London from and against "Claims" (as defined in the Settlement Agreement) by certain other insurers relating to the claims released in the Settlement Agreement. (Ex. B § VI.A.1.) Further, subject to certain terms and conditions of the Settlement Agreement, Olin agreed to "reimburse all reasonable and necessary attorneys' fees and amounts incurred by London in defending" any claim properly the subject of indemnification. (*Id.* § VI.A.4.) These provisions are collectively referred to herein as the "Indemnity Provisions."

11.     The Settlement Agreement also includes a "Judgment Reduction" provision, which, subject to certain terms and conditions of the Settlement Agreement, provides:

> 1.     Olin agrees that in any proceeding, suit or action involving Olin and any Other Insurer relating to Claims that are the subject of a release set forth in Section IV, Paragraph A, above, or are the subject of the agreements set forth in Section VII below, where any Other Insurer has asserted, asserts, or could assert any Contribution Claim against London Market Insurers, any judgment obtained by Olin or its agents against any such Other Insurer shall be automatically reduced by the amount, if any, that London Market Insurers would have been liable to pay such Other Insurer as a result of that Contribution Claim, so that the Contribution Claim by such Other Insurer against London Market Insurers is thereby satisfied and extinguished.
>
> 2.     Olin further agrees that in order to effectuate Section VI, Paragraph B.1, above, in any action between it and an Other Insurer, Olin shall either:  (i) obtain a finding from that court of the amount, if any, London Market Insurers would be required to pay such Other Insurer under its Contribution Claim; or (ii) deposit with a third-party escrow agent any amounts paid by such Other Insurer to Olin until any Contribution Claims by those Other Insurers are finally resolved.

(Ex. B § VI.B ("Judgment Reduction Provision").)

12.     The Settlement Agreement defines "Contribution Claim" (as used in the Judgment Reduction Provision above) as "any Claim for contribution, subrogation, indemnification, reimbursement or other similar Claim that relates to a payment to Olin by an Other Insurer (as defined [t]herein) with respect to a Claim that, if asserted by Olin against [London], would be released by the terms of this Agreement."  (Ex. B § I.)

13.     Olin and London—recognizing, intending, and agreeing that London could not use the Judgment Reduction Provision to reduce any obligation London may have with respect to judgments entered against certain Other Insurers (such as Lamorak) to which London has a

reinsurance obligation—expressly included a reinsurance exception in Section XX of the Settlement Agreement. Section XX provides:

> Notwithstanding any terms in this Agreement, Olin shall not be releasing or required to indemnify [London] in [London's] capacity solely as: (i) reinsurers of policies issued by Employers Commercial Union Insurance Company of America [now known as Lamorak], Employers Liability Assurance Corporation, Ltd., Employers Surplus Lines, Continental Casualty Company, General Reinsurance Company, American Re-Insurance Company, Insurance Company of North America; or (ii) reinsurers of any of the policies issued by any Other Insurer set forth in Attachment H provided that it is explicitly agreed by the Parties that nothing contained in this proviso (ii) shall apply to [London] in [London's] capacity as reinsurers of North River's obligations under the JU Policies, which obligations are the subject of explicit releases in this Agreement.

(Ex. B § XX.)

14.     Section XX makes clear that the Judgment Reduction Provision is not intended to be used as a means of requiring Olin to subsidize any part of a judgment that London reinsures. Specifically, Section XX memorializes the parties' intent in the Settlement Agreement that London would not be entitled to any judgment reduction with regard to any contribution claim brought by an Other Insurer (such as Lamorak) against London for a judgment obligation of an Other Insurer that London reinsured.

15.     London reinsures Lamorak with respect to Olin's coverage claims against Lamorak regarding the Five Sites and other sites at issue in the SDNY Action. Accordingly, under Section XX of the Settlement Agreement, London cannot use or otherwise benefit from the Judgment Reduction Provision to reduce any obligation London may have with respect to a judgment entered for Olin against Lamorak in the SDNY Action.

16.     The Settlement Agreement, in Section XII, also requires that London "undertake all reasonable actions to co-operate with Olin regarding (a) any indemnification and/or judgment

reduction under Section VI of this Agreement and (b) any action or proceeding of any type whatsoever commenced or prosecuted by any Person not a Party to this Agreement to invalidate, interpret or prevent the validation, enforcement or carrying out of all or any provisions of this Agreement." (Ex. B § XII.) Further, the Settlement Agreement requires London to "defend any . . . Claim [, including a Contribution Claim,] in good faith." (*Id.* § VI.A.4.) Additionally and more generally, beyond that specific good faith obligation of London, the Settlement Agreement is governed by New York law, which imputes a duty of good faith and fair dealing in the Settlement Agreement.

17.     The Settlement Agreement, in Section XI, also requires that its terms be kept confidential.   Section XI provides that "all matters relating to the terms, negotiation and implementation of this Agreement shall be confidential and are not to be disclosed" to third parties except by court order, written agreement, or:

> (i) to reinsurers of any London Market Insurer directly or through intermediaries; (ii) outside auditors or accountants of any Party; (iii) in securities filings or otherwise when, in the opinion of counsel such disclosure is required or advisable with respect to any law or regulation; (iv) representatives of a non-party insurer subscribing or allegedly subscribing to one or more of the Subject Insurance Policies but not falling within the definition of London Market Insurer because such insurer is, has been or may become insolvent in the future including, without limitation, any liquidators, provisional liquidators, scheme administrators, trustees, or similarly empowered Persons or entities acting for such insurer; (v) by Olin to Squibb; (vi) by Olin to its predecessors- or successors-in interest, including, but not limited to, Arch Chemicals, Inc., GD-OTS and GenCorp; (viii) as required, to the Inland Revenue, the Internal Revenue Service or other U.S. or U.K. governmental authorities which properly requires disclosure, or as otherwise required by law.

(Ex. B § XI.)

18.     Finally, the Settlement Agreement lists as "Underwriter Third Party Beneficiaries" the following:  (i) Resolute Management Services Limited ("RMSL"), (ii) the "Equitas Entities"

(as defined in the Settlement Agreement), (iii) any person retained by or on behalf of London to act as its claims handling agent or to provide actuarial, legal, or other advice or services related to claims handling, (iv) past, present, and future, reinsurers and retrocessionaries[1] of London or the Equitas Entities, including but not limited to (a) National Indemnity Company ("NICO") and (b) "any other entity from time to time controlled (whether directly or indirectly), by Berkshire Hathaway, Inc. that is a reinsurer or retrocessionaire for any one or more of [London], [RMSL] and/or the Equitas Entities," (v) past, present, and future trustees, officers, directors, employees, parents, subsidiaries, affiliates, representatives, attorneys, and agents of London or of any of the persons set forth in (i)-(iv) above, and (vi) respective heirs, executors, predecessors, successors, and assigns or equivalent appointee(s) under relevant insolvency law of London or any persons identified in (i)-(v) above.

### *Olin's 2015 Judgments Against Lamorak*

19.     From 2009 and 2011, Olin reached settlements with multiple other defendant-insurers in the SDNY Action.  Lamorak, the only remaining defendant in the SDNY Action, has been and remains the lone holdout.

20.     In 2015, the United States District Court for the Southern District of New York entered judgments in favor of Olin and against Lamorak for approximately $87 million as to the Five Sites ("2015 Judgments").

---

[1]     A reinsurer is an entity that provides financial protection to a primary insurance company by agreeing to insure risks that are too large for that primary insurer to handle on its own.  In exchange for a premium paid by the primary insurer, the reinsurer agrees to assume all or part of the liability of the primary insurer's potential loss under policies issued by the primary insurer. Reinsurers themselves can also have their own reinsurers, which are sometimes called "retrocessionaires."

21.     In July 2017, the United States Court of Appeals for the Second Circuit affirmed the 2015 Judgments in part, vacated them in part, and remanded for an award to Olin of additional damages against Lamorak and a determination of any applicable setoff to Lamorak based upon amounts paid as to the Five Sites by London and other settling insurers at the same coverage layer as Lamorak. *Olin Corp. v. OneBeacon Am. Ins. Co.*, 864 F.3d 130 (2d Cir. 2017). On remand, beyond litigating the remanded issues on the Five Sites, Olin and Lamorak are currently litigating Lamorak's liability for more than a dozen additional remaining sites pending in the SDNY Action ("Remaining Sites").

### The London-Lamorak Reinsurance Relationship

22.     As indicated above, London—in addition to its direct insurance obligation to Olin (which was largely settled through the Settlement Agreement)—reinsures Lamorak as to the Lamorak policies at issue with respect to the 2015 Judgments for the Five Sites, as well as with respect to Lamorak policies at issue as to the Remaining Sites in the SDNY Action.

23.     While London settled its own direct liability with Olin via the Settlement Agreement, London—because it reinsures Lamorak—has financial responsibility for and a direct financial interest in Lamorak's ultimate judgment obligations to Olin in the SDNY Action. As Lamorak has admitted, the Lamorak policies at issue in the 2015 Judgments are "essentially London obligations 'issued on [Lamorak] paper.'" (Ex. C at 3.)

### The Additional London-Lamorak Relationships:
### Berkshire Hathaway Controls London and Lamorak

24.     London's and Lamorak's direct insurance obligations to Olin, as well as London's own reinsurance obligations to Lamorak, were controlled at the time of the Settlement Agreement in 2009 and to this day are controlled to a large extent by three interrelated entities that are ultimately owned, controlled, or part of Berkshire Hathaway, Inc. ("Berkshire Hathaway") and the

8

Berkshire Hathaway group of insurance companies (collectively, "Berkshire Hathaway Insurance Group"). Those three entities are (i) NICO, (ii) Resolute Management Inc. ("RMI"), and (iii) RMSL.

25.     NICO is a large insurance company, a subsidiary of Berkshire Hathaway, and part of the Berkshire Hathaway Insurance Group. At all relevant times from 2009 through 2013, Forrest N. Krutter ("Krutter") led and was an officer and/or director of RMI, RMSL, NICO, and other companies in the Berkshire Hathaway Insurance Group.

26.     RMI is an insurance claims handler and an indirect subsidiary of a company that is owned by Berkshire Hathaway and is a part of the Berkshire Hathaway Insurance Group. Pursuant to an Intercompany Administrative Services Agreement, dated February 27, 2004, NICO delegated certain claims handling responsibilities it had for Lamorak to RMI.

27.     RMSL (formerly known as Equitas Claims Services Limited) is, like RMI, a claims handling affiliate for NICO and also a member of the Berkshire Hathaway Insurance Group. RMSL's role is as follows:

> a.     In September 1996, an entity called Equitas Limited was established to reinsure and "run off"[2] the liabilities of all "Names" (otherwise known as underwriters) at London[3] relating to insurance policies London issued (including the relevant policies London issued to Olin) to cover, among other items, occurrences and accidents for years prior to 1992.

---

[2]     "Run off" in this context means to manage, handle, and resolve claims under legacy insurance policies, including by way of (i) individual settlements, (ii) more comprehensive full or limited policy buy-backs or, alternatively, (iii) vigorously fighting any potential liabilities.

[3]     London is not organized as a typical insurance company, but instead is a marketplace comprised of corporate or individual underwriters grouped in syndicates, which come together to pool and spread risk. Such underwriters are traditionally referred to as "Names."

b.    In November 2006, Equitas Limited was restructured when it entered into an agreement with the Berkshire Hathaway Insurance Group under which NICO reinsured Equitas Limited's liabilities and RMSL took over responsibility for the run off of those liabilities. The first phase of this transaction was completed in March 2007 and the second and final phase in June 2009.

c.    On June 30, 2009, all liabilities were transferred to Equitas Insurance Limited, a specially-formed affiliate of Equitas Limited, with the result being that the Names are no longer responsible for pre-1992 underwriting liabilities at London and, instead, Equitas Insurance Limited is.

d.    All the claims for those pre-1992 liabilities are now managed by RMSL, as agent for Equitas Insurance Limited. NICO covers the costs of running RMSL. RMSL is entitled to exercise broad authority to manage claims with regard to the pre-1992 liabilities.

e.    Berkshire Hathaway's Chairman and Chief Executive Officer, Warren Buffett, described this transaction as putting "Berkshire Hathaway's Gibraltar-like strength behind the remaining problems" with claims under the transferred pre-1992 liabilities—which included London's and Lamorak's ongoing litigation with Olin.

f.    In the transaction, the Berkshire Hathaway Insurance Group was paid a substantial premium to take on all of the liabilities of Equitas Limited and provide additional reinsurance. That premium included all of Equitas Limited's assets, totaling billions of dollars.

g.  The economic effect of the transaction was that the Berkshire Hathaway Insurance Group would be directly affected by the outcome of any litigation with Olin involving any insurance policies that London had issued to Olin or that Lamorak had issued to Olin that London reinsured (all of which, in turn, had been insured by Equitas Limited, which, through the above-described transaction was further reinsured by NICO as a part of the Berkshire Hathaway Insurance Group).

28.  In addition to the RMSL/Equitas-related transaction described above concerning London and the Berkshire Hathaway Insurance Group, entities within the Berkshire Hathaway Insurance Group also entered into another transaction, the net result of which was to give the Berkshire Hathaway Insurance Group (through NICO and its agent RMI) responsibility to manage the run off of Lamorak's liabilities, including its liabilities to Olin.

29.  Specifically as to Olin, NICO and RMSL (and their respective board members, including Krutter) approved London entering into the Settlement Agreement.  RMSL is identified in the Settlement Agreement (specifically, as an "Underwriter Third-Party Beneficiary"), but RMI is not.  Nonetheless, in 2010, RMSL appointed RMI to manage Olin's claims on behalf of London, including certain claims that were not finally resolved by the Settlement Agreement.

30.  As a result, that meant that, not only was the Berkshire Hathaway Insurance Group responsible for managing the handling of Olin's claims against both Lamorak and London at the same time, but that the very same entity within the Berkshire Hathaway Insurance Group—NICO (together with its agent RMI)—was also responsible for managing future litigation, including potential claims for contribution as to the underling Olin claims, on behalf of both London and Lamorak at the same time.  For instance, Pamela Post served for years as the RMI account manager

11

for the "Olin account" and thereby simultaneously provided claims handling services for both Lamorak's and London's independent liabilities to Olin.

31.     RMI, NICO, and others within the Berkshire Hathaway Insurance Group set up a situation where NICO-controlled Lamorak could sue NICO-controlled London for contribution on Olin's claims and vice versa.

32.     After the execution of the Settlement Agreement, RMI was improperly given access to or knowledge of, directly or indirectly, the confidential terms of the Settlement Agreement at a time when it was concurrently acting as an agent for Lamorak, which is an "Other Insurer" under the terms of the Settlement Agreement.  Such disclosure was expressly prohibited by Section XI of the Settlement Agreement.

33.     Additionally, as noted above, following execution of the Settlement Agreement, RMSL delegated its claims handling obligations on behalf of London to RMI.  At the time of that delegation, London did nothing to ensure that the confidential terms of the Settlement Agreement would be protected from disclosure to those at RMI, which was simultaneously engaged in representing Lamorak's interests as an "Other Insurer" to Olin.

34.     As admitted by Lamorak in the SDNY Action, RMI now acts as "agent/administrator" to manage, control, and resolve claims "as to the Olin account" on behalf of both Lamorak and the vast majority of London. (Ex. D; *see also* Ex. E ¶ 5 (protective order entered in the SDNY Action noting that RMI is "empowered by Lamorak as administrators to direct counsel for Lamorak").)

35.     Because of these interrelated insurance and reinsurance relationships, NICO and its agents, RMI and RMSL, ultimately control the same pool of money between and among Lamorak and London with respect to Olin's coverage claims.  Thus, the final financial interest and

responsibility to satisfy the 2015 Judgments and future judgments in favor of Olin and against Lamorak does not rest with any independent entities, but with entities all operating within the Berkshire Hathaway Insurance Group—NICO, RMI, and RMSL.

### *Lamorak's Sham Contribution Claims Against London and London's Improper Claims Against Olin*

36.     In or prior to July 2017, on information and belief, London disclosed the Settlement Agreement or its terms to NICO and RMI (acting in its capacity as the claims handler for Lamorak) in violation of the confidentiality provision (Section XI) of the Settlement Agreement.  Moreover, London's conduct was (i) contrary to the parties' intent in the reinsurance exception (Section XX) of the Settlement Agreement and (ii) for the wrongful, opportunistic, and collusive purpose of facilitating an improper reduction in the 2015 Judgments and future judgements against Lamorak via sham contribution claims by NICO-controlled Lamorak against NICO-controlled London for the shared financial benefit of Lamorak, London, NICO, RMSL, and RMI (and their interests in the Berkshire Hathaway Insurance Group) and to the detriment of Olin.

37.     London's disclosure of the Settlement Agreement or it terms enabled RMI and Lamorak to wrongly become aware of the Settlement Agreement's Judgment Reduction Provision. RMI and Lamorak have been using their improper knowledge of the Settlement Agreement's terms to harm Olin as described herein.  For this reason, among others, the Settlement Agreement's Judgment Reduction Provision is inapplicable and unenforceable as to NICO-controlled Lamorak's alleged contribution claims against NICO-controlled London.

38.     Additionally or alternatively, even if London had not improperly disclosed the Settlement Agreement or its terms, the Judgment Reduction Provision is still inapplicable and unenforceable as to NICO-controlled Lamorak's alleged contribution claims against NICO-controlled London.  With RMI instructing or otherwise causing NICO-controlled Lamorak to file

a contribution claim against NICO-controlled London, the Berkshire Hathaway Insurance Group, including NICO, is still improperly manipulating claims in an effort to reduce its overall liability to Olin.

39.     RMI was aware that London reinsured Lamorak and that Lamorak is, in turn, further reinsured by the Berkshire Hathaway Insurance Group.  RMI was also aware at the time NICO-controlled Lamorak sued NICO-controlled London that London reinsures Lamorak and is also reinsured by the Berkshire Hathaway Insurance Group.

40.     RMI thus directed NICO-controlled Lamorak to assert contribution claims against NICO-controlled London not for the purpose of obtaining genuine contribution from an independent third-party, but for the purpose of forcing Olin to subsidize London's reinsurance obligation to Lamorak and obtaining an improper, self-dealing reduction in the overall amount that the Berkshire Hathaway Insurance Group would ultimately have to pay to Olin as a result of the 2015 Judgments and any future judgments.

41.     In particular, on information and belief, NICO-controlled Lamorak and NICO-controlled London, at the direction of NICO's agent, RMI, have been engaged in a coordinated and collusive scheme since at least July 2017 to improperly and opportunistically exploit the Settlement Agreement's Judgment Reduction Provision as a means of maximizing NICO-controlled London's contribution obligation to NICO-controlled Lamorak, and thereby potentially reducing NICO-controlled London's reinsurance obligations to NICO-controlled Lamorak, with the ultimate result being a reduction in the overall amounts payable by NICO-controlled Lamorak under the 2015 Judgments and all future judgments entered in favor of Olin.

42.     The motivation for the Berkshire Hathaway Insurance Group's scheme to manipulate Lamorak and London through NICO and RMI/RMSL is simple:  by setting up a

14

situation where NICO-controlled London will lose the contribution claims to NICO-controlled Lamorak, London and the Berkshire Hathaway Insurance Group could potentially benefit. That is because, to the Berkshire Hathaway Insurance Group's way of thinking, every dollar London loses in contribution to Lamorak is one less dollar that the Berkshire Hathaway Insurance Group may ultimately have to pay Olin. The Settlement Agreement prohibits the Berkshire Hathaway Insurance Group, including London, from using any such collusive scheme to pay Olin less than it would otherwise be obligated to pay.

43.    The above-described scheme was put into motion at least by the time of the Second Circuit's remand of the 2015 Judgments in the SDNY Action. Directly following the remand, NICO-controlled Lamorak sought leave to assert third-party claims against NICO-controlled London (and various other Olin insurers, including other NICO-controlled entities such as Continental Casualty Company) for "equitable contribution" with respect to Lamorak's liability to Olin as to the Five Sites and the Remaining Sites.

44.    On October 12, 2017, the district court in the SDNY Action entered an order allowing Lamorak to file its claims as to the Remaining Sites, but not as to the Five Sites.

45.    On October 19, 2017, Lamorak commenced third-party claims against London and other Olin insurers for contribution and other relief within the SDNY Action with respect to the Remaining Sites ("Lamorak Federal Third-Party Claims" or "Lamorak Federal Third-Party Proceedings").

46.    Also on October 19, 2017, Lamorak commenced a separate action in New York state court (*Lamorak Ins. Co. v. Certain Underwriters At Lloyd's, London and London Market Ins. Cos., et al.*, Index No. 656466-2017, Supreme Court, New York County), asserting contribution

claims against London and the other Olin insurers for contribution and other claims with respect to the Remanded Sites ("Lamorak State Claims" or "Lamorak State Court Action").

47.     The Lamorak Federal Third-Party Claims and the Lamorak State Claims are collectively referred to herein as "Lamorak Contribution Claims."

48.     On information and belief, NICO and its agent RMI have directed Lamorak and London to take litigation positions that are contrary to the Settlement Agreement and in furtherance of London's and the Berkshire Hathaway Insurance Group's shared goal of causing London to incur contribution and related obligations to Lamorak that, among other things, are aimed at triggering an improper reduction in Lamorak's (and, thus, London's and NICO/RMI's) overall exposure to Olin.  On information and belief, London and the counsel retained for it by NICO and RMI have elected not to vigorously oppose the NICO-controlled Lamorak Contribution Claims, despite London's contractual duty to cooperate with Olin and to defend against such contribution claims in good faith.  Instead, London is purposely trying to lose the Lamorak Contribution Claims to Lamorak for the benefit of London's, Lamorak's, and the Berkshire Hathaway Insurance Group's collective, mutual interest against Olin.

49.     For example, rather than move to dismiss the Lamorak Contribution Claims both in the Lamorak Federal Third-Party Proceedings and the Lamorak State Court Action, London has filed answers and brought claims for judgment reduction and indemnity against Olin.

50.     The Berkshire Hathaway Insurance Group, via NICO-controlled London, is attempting to manufacture a contribution obligation to the NICO-controlled Lamorak, so that London and Lamorak (together with their ultimate interests within the Berkshire Hathaway Insurance Group) may, in turn, reduce their overall losses and exposure to Olin.  That is improper under the terms of the Settlement Agreement and the law.  The Settlement Agreement prohibits

16

London, Lamorak, and the Berkshire Hathaway Insurance Group entities from using any such collusive scheme to pay Olin less than Lamorak or London would otherwise be obligated to pay. The Settlement Agreement's Judgment Reduction Provision and Indemnity Provisions are inapplicable and unenforceable as to the Lamorak Contribution Claims, *i.e.*, as to NICO-controlled Lamorak's alleged contribution and other claims against NICO-controlled London.

## COUNT I – DECLARATORY JUDGMENT

51.    The foregoing paragraphs are incorporated by reference as though set forth herein.

52.    The Settlement Agreement's Judgment Reduction Provision (§ VI.B) and/or Indemnity Provisions (§§ VI.B.1, 4) have no applicability, force, or effect with respect to any of the Lamorak Contribution Claims against London because:

  a.  The Judgment Reduction Provision does not and cannot cause any London contribution obligation or other liability to Lamorak to reduce any Olin judgment against Lamorak.

  b.  The Indemnity Provisions do not and cannot cause any obligations of Olin to London for or otherwise with respect to any of the Lamorak Contribution Claims.

53.    The foregoing paragraph is true because:

  a.  The Settlement Agreement expressly bars London from seeking any judgment reduction as to judgments London reinsures. Pursuant to Settlement Agreement Section XX, the Judgement Reduction clause does not and cannot apply if London reinsures the party seeking contribution against it. London reinsures Lamorak, so Section XX bars application of the Judgement Reduction

Provision as to any contribution obligation owed by London to Lamorak with respect to the 2015 Judgments or future judgments.

b. The Judgment Reduction Provision and the Indemnity Provisions can only apply if London is adverse to the party seeking contribution. Here, London and Lamorak are not adverse because both have the same unified financial interest of reducing NICO's and others in the Berkshire Hathaway Insurance Group's overall liability to Olin. The Lamorak Contribution Claims are the product of a collusive effort by and between London, Lamorak, NICO, and other members of the Berkshire Hathaway Insurance Group, through a common agent, RMI, to manufacture a London contribution obligation to Lamorak as a means of triggering a judgment reduction that could reduce the shared overall liability of London, Lamorak, NICO, and other members of the Berkshire Hathaway Insurance Group.

c. London violated its confidentiality obligations under Section XI of the Settlement Agreement by allowing or failing to prevent Lamorak and those who control and/or represent Lamorak from becoming aware of the Judgment Reduction Provision in the Settlement Agreement. London's breach facilitated Lamorak's filing of the Lamorak Contribution Claims against London in a manner that prejudices Olin and is inconsistent with and intended to subvert the terms and intent of the Settlement Agreement.

d. London violated and/or is violating its duty of cooperation under Section XII of the Settlement Agreement and/or its duty to defend against the Lamorak Contribution Claims in good faith under Section VI.A of the Settlement

18

Agreement by, among other things, (i) having disclosed the confidential terms of the Settlement Agreement to Lamorak and Lamorak's claims handler, RMI, and/or others with the Berkshire Hathaway Insurance Group; (ii) having facilitated Lamorak's filing of contribution claims prejudicial to Olin; (iii) colluding with Lamorak, RMI, NICO, and others in the Berkshire Hathaway Insurance Group to attempt to create an improper contribution obligation to Olin's detriment; (iv) colluding with Lamorak, RMI, NICO, and others in the Berkshire Hathaway Insurance Group to attempt to create an improper judgment reduction that is barred by Section XX of the Settlement Agreement; (v) having failed to undertake all reasonable actions to co-operate with Olin regarding any judgment reduction and/or indemnification under Section VI of the Settlement Agreement; (vi) having failed to undertake all reasonable actions to co-operate with Olin regarding the vigorous defense of the Lamorak Contribution Claims; (vii) failing to vigorously defend against the Lamorak Contribution Claims; (viii) refusing Olin's requests that London move to dismiss Lamorak's contribution claims, despite there being a good faith basis for seeking such dismissal; (ix) refusing Olin's requests that London provide information for indemnification (*e.g.*, a budget to defend against the Lamorak Contribution Claims); and/or (x) otherwise failing to deal in good faith with respect to the Lamorak Contribution Claims and the Settlement Agreement— all of which are inconsistent with the Judgment Reduction Provision and Indemnity Provisions.

e.  London is seeking relief, taking positions, seeking to enforce terms, and/or otherwise engaging in conduct that violates its duty of good faith and fair dealing (both as set forth expressly in the Settlement Agreement and as implied by New York law), including by (i) engaging in collusive, opportunistic, and unreasonable conduct against Olin to prevent Olin from receiving the fruits of its bargain with London under the Settlement Agreement, and (ii) frustrating the overarching purpose and intent of the Settlement Agreement by, among other things, (A) assisting, allowing, or facilitating Lamorak's filing of the Lamorak Contribution Claims in a manner that is prejudicial to Olin; (B) working in conjunction with Lamorak, RMI, NICO, and others of the Berkshire Hathaway Insurance Group to use the Judgment Reduction Provision and/or the Indemnity Provisions to extract an improper benefit for London, Lamorak, NICO, and/or the others in the Berkshire Hathaway Insurance Group to the detriment of Olin; (C) colluding with Lamorak, RMI, NICO, and others in the Berkshire Hathaway Insurance Group to attempt to create an improper contribution obligation to Olin's detriment; (D) colluding with Lamorak, RMI, NICO, and others in the Berkshire Hathaway Insurance Group to attempt to create an improper judgment reduction that is barred by Section XX of the Settlement Agreement; and/or (E) failing to vigorously defend against Lamorak's Contribution Claims with, among other things, the intent of causing itself (London) to incur a contribution liability as a means of reducing its own reinsurance liability to Lamorak and the Berkshire Hathaway Insurance Group's ultimate obligation to Olin.

London has thus waived and/or forfeited its right and/or is otherwise not entitled to seek any judgment reduction or indemnification under Settlement Agreement with respect to the Lamorak Contribution Claims.

54.    London contends that it is entitled to judgment reduction and/or indemnification as to the Lamorak Contribution Claims. Despite London's contention, London has refused and is refusing to perform its obligations under the Settlement Agreement, including its duties of cooperation, good faith, and fair dealing.

55.    An actual controversy and uncertainty exists between the parties sufficient for this Court, pursuant to C.P.L.R. § 3001, to issue declaratory relief and declare the rights and obligations of the parties under the Settlement Agreement. Declaratory relief is an appropriate means of resolving this controversy before any further disputes, claims, harms, or injuries arise.

56.    Accordingly, this Court should issue declaratory relief in favor of Olin and against London declaring that the Judgment Reduction Provision (Settlement Agreement § VI.B) and Indemnity Provisions (Settlement Agreement §§ VI.B.1, 4) have no applicability, force, or effect with respect to any of the Lamorak Contribution Claims against London—and specifically that (i) the Judgment Reduction Provision does not and cannot cause any London contribution obligation or other liability to Lamorak to reduce any Olin judgment against Lamorak, and (ii) the Indemnity Provisions do not and cannot give rise to any obligations of Olin to London for or otherwise with respect to any of the Lamorak Contribution Claims.

## COUNT II – BREACH OF CONTRACT

57.    The foregoing paragraphs are incorporated by reference as though set forth herein.

58.    The Settlement Agreement is a valid and enforceable contract.

59.    Olin has complied with and performed all of its obligations under the Settlement

Agreement and is prepared to continue to do so.

60.     London has beached and/or is breaching the Settlement Agreement in at least the
following ways:

    a.  Under Section XI of the Settlement Agreement, London was required to keep
the terms of the Settlement Agreement confidential.  As discussed above,
London breached its confidentiality obligations under Section XI of the
Settlement Agreement by allowing or failing to prevent Lamorak and those who
control and/or represent Lamorak from becoming aware of the Judgment
Reduction Provision in the Settlement Agreement.  London's breach facilitated
Lamorak's filing of the Lamorak Contribution Claims against London in a
manner that prejudices Olin and is inconsistent with the terms and intent of the
Settlement Agreement.

    b.  Under Section XII of the Settlement Agreement, London is required to
undertake all reasonable actions to cooperate with Olin regarding any
indemnification and/or judgment reduction sought under the Settlement
Agreement, and, under Section VI.A of the Settlement Agreement, London is
required to defend in good faith any contribution claim brought against it.
London breached and/or is breaching its duty of cooperation under Section XII
and/or its duty to defend against the Lamorak Contribution Claims in good faith
under Section VI by, among other things, (i) disclosing the confidential terms
of the Settlement Agreement to Lamorak and Lamorak's claims handler, RMI,
and/or others with the Berkshire Hathaway Insurance Group; (ii) facilitating
Lamorak's filing of contribution claims prejudicial to Olin; (iii) colluding with

Lamorak, RMI, NICO, and others in the Berkshire Hathaway Insurance Group to attempt to create an improper contribution obligation to Olin's detriment; (iv) colluding with Lamorak, RMI, NICO, and others in the Berkshire Hathaway Insurance Group to attempt to create an improper judgment reduction that is barred by Section XX of the Settlement Agreement; (v) failing to undertake all reasonable actions to co-operate with Olin regarding any judgment reduction and/or indemnification under Section VI of the Settlement Agreement; (vi) failing to undertake all reasonable actions to co-operate with Olin regarding the vigorous defense of the Lamorak Contribution Claims; (vii) failing to vigorously defend against the Lamorak Contribution Claims; (viii) refusing Olin's requests that London move to dismiss Lamorak's contribution claims, despite there being a good faith basis for seeking such dismissal; (ix) refusing Olin's requests that London provide information for indemnification (*e.g.*, a budget to defend against the Lamorak Contribution Claims); and/or (x) otherwise failing to deal with Olin in good faith with respect to the Lamorak Contribution Claims and the Settlement Agreement—all of which are inconsistent with the Judgment Reduction Provision and Indemnity Provisions.

c.   Under New York law, every contract includes an implied covenant of good faith and faith dealing.  The implied covenant of good faith and fair dealing requires that London deal fairly and in good faith with Olin, and do nothing to injure, frustrate, or interfere with Olin's rights to receive the benefits and peace of mind it was promised and bargained for under the Settlement Agreement.  London breached the implied covenant of good faith and fair dealing including by

seeking relief, taking positions, and seeking to enforce terms, and/or otherwise engaging in conduct inconsistent with good faith and fair dealing. London breached and/or is breaching its implied duty of good faith and fair dealing by, among other things, (i) engaging in collusive, opportunistic, and unreasonable conduct against Olin to prevent Olin from receiving the fruits of its bargain with London under the Settlement Agreement, and (ii) frustrating the overarching purpose and intent of the Settlement Agreement by, among other things (A) assisting, allowing, or facilitating Lamorak's filing of the Lamorak Contribution Claims that are prejudicial to Olin; (B) working in conjunction with Lamorak, RMI, NICO, and others of the Berkshire Hathaway Insurance Group to use the Judgment Reduction Provision and/or the Indemnity Provisions to extract an improper benefit for London, Lamorak, NICO, and/or others in the Berkshire Hathaway Insurance Group to the detriment of Olin; (C) colluding with Lamorak, RMI, NICO, and others in the Berkshire Hathaway Insurance Group to attempt to create an improper contribution obligation to Olin's detriment; (D) colluding with Lamorak, RMI, NICO, and others in the Berkshire Hathaway Insurance Group to attempt to create an improper judgment reduction that is barred by Section XX of the Settlement Agreement; and/or (E) failing to vigorously defend against Lamorak's Contribution Claims with, among other things, the intent of causing itself (London) to incur a contribution obligation or other liability as a means of reducing its own reinsurance liability to Lamorak and the Berkshire Hathaway Insurance Group's ultimate obligation to Olin.

61.    As a result of the above breaches, London has caused and is causing Olin to suffer harm.

62.    By reason of the above breaches, Olin is entitled to the following relief:   (a) all reasonable and appropriate injunctive relief in support of the declaratory relief requested in Count I, including an order (i) prohibiting London from invoking and/or otherwise seeking to enforce the Judgment Reduction Provision and Indemnification Provisions with respect to the Lamorak Contribution Claims and any future contribution claims brought by Lamorak against London and/or by any other entity that London reinsures; (ii) requiring London to dismiss its claims against Olin with respect to the Lamorak Contribution Claims, including London's claim against Olin in the SDNY Action (to the extent such claims have not already been dismissed); (iii) requiring London to tender to Olin full control over the defense of the Lamorak Contribution Claims against London, and (iv) requiring London to mitigate the harm of and to obtain the return, destruction, and/or agreed nonuse of all confidential information wrongfully disclosed in violation of the Settlement Agreement and/or requiring London to abide by the confidentiality requirements set forth in Section XI of the Settlement Agreement, and (b) to the extent the declaratory relief and injunctive relief requested above does not make Olin whole, damages—including but not limited to compensatory and consequential damages;

\* \* \*

**WHEREFORE**, Olin respectfully requests that this Court enter judgment in its favor and against London and that this Court award Olin the following relief:

A.    Declaratory relief in favor of Olin and against London declaring that the Judgment Reduction Provision (Settlement Agreement § VI.B) and Indemnity Provisions (Settlement Agreement §§ VI.B.1, 4) have no applicability, force, or effect with respect to any of the Lamorak

Contribution Claims against London—and specifically that (i) the Judgment Reduction Provision does not and cannot cause any London contribution obligation or other liability to Lamorak to reduce any Olin judgment against Lamorak, and (ii) the Indemnity Provisions do not and cannot cause any obligations of Olin to London for or otherwise with respect to any of the Lamorak Contribution Claims;

      B.      All reasonable and appropriate injunctive relief in support of the declaratory relief requested above and/or otherwise, including an order (i) prohibiting London from invoking and/or otherwise seeking to enforce the Judgment Reduction Provision and Indemnity Provisions with respect to the Lamorak Contribution Claims and any future contribution claims brought by Lamorak against London and/or by any other entity that London reinsures; (ii) requiring London to dismiss its claims against Olin with respect to the Lamorak Contribution Claims, including London's claim against Olin in the SDNY Action (to the extent such claims have not already been dismissed); (iii) requiring London to tender to Olin full control over the defense of the Lamorak Contribution Claims against London, and (iv) requiring London to mitigate the harm of and to obtain the return, destruction, and/or agreed nonuse of all confidential information wrongfully disclosed in violation of the Settlement Agreement and/or requiring London to abide by the confidentiality requirements set forth in Section XI of the Settlement Agreement;

      C.      Damages, including but not limited to compensatory and consequential damages, as a result of London's conduct;

      D.      Reasonable attorneys' fees and expenses in amounts as yet to be ascertained and determined at trial;

      E.      Interest according to law; and

      F.      Such other and further relief as this Court deems just and proper.

**JENNER & BLOCK LLP**

Dated: January 10, 2018          By:     /s/ Peter J. Brennan
      New York, New York

Peter J. Brennan
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350 (telephone)
(312) 527-0484 (facsimile)
pbrennan@jenner.com

and

Olivia G. Hoffman
919 Third Avenue
New York, New York 10002
(212) 891-1600 (telephone)
(212) 891-1699 (facsimile)
ohoffman@jenner.com

*OF COUNSEL:*

Craig C. Martin
Matthew J. Thomas
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350 (telephone)

and

Alan E. Popkin
David W. Sobelman
Jerry Ronecker
Joel B. Samson
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
314-480-1500 (telephone)

*Attorneys for Plaintiff Olin Corporation*

## DEMAND FOR JURY TRIAL

Olin demands trial by jury on all issues so triable.

**JENNER & BLOCK LLP**

Dated: January 10, 2018      By:      Peter J. Brennan _____
         New York, New York

                                        Peter J. Brennan
                                        353 North Clark Street
                                        Chicago, Illinois 60654
                                        (312) 222-9350 (telephone)
                                        (312) 527-0484 (facsimile)
                                        pbrennan@jenner.com

                                        and

                                        Olivia G. Hoffman
                                        919 Third Avenue
                                        New York, New York 10002
                                        (212) 891-1600 (telephone)
                                        (212) 891-1699 (facsimile)
                                        ohoffman@jenner.com

*OF COUNSEL:*

Craig C. Martin
Matthew J. Thomas
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350 (telephone)

and

Alan E. Popkin
David W. Sobelman
Jerry Ronecker
Joel B. Samson
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
314-480-1500 (telephone)

*Attorneys for Plaintiff Olin Corporation*